UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**JULES ANTHONY SIMON**
    **Appellant**

**APPEAL CIVIL ACTION**

**No. 3:22-cv-00805-SDD-SDJ**
**No. 3:22-cv-00867-SDD-SDJ**

**VERSUS**

**ANDREW J. HARRISON, JR.**
    **Appellee**

## RULING AND ORDER

Before the Court is an Appeal from the United States Bankruptcy Court for the Middle District of Louisiana, Judge Douglas D. Dodd, as supported by the *Brief*[1] tendered by Appellant, Jules Anthony Simon (hereinafter "Simon"). Countering the appeal is the *Brief*[2] of Andrew J. Harrison ("Harrison"), to which Simon filed a *Reply*.[3] For the reasons set forth below, the Ruling and Judgment of the Bankruptcy Court is AFFIRMED.

**I.     BACKGROUND**

Simon appeals the Bankruptcy Court's decision to deny Simon a chapter 7 debtor's discharge. Simon, his brother Denis Simon ("Denis"), and a third party formed D Squared, LLC ("D Squared") to buy land for a hunting camp in 2010.[4] The members agreed that each would make one-third of the quarterly mortgage payments.[5] In 2016, Simon became unable to make his share of the payments, and his brother Denis made payments for

---

[1] Rec. Doc. 11.
[2] Rec. Doc. 13.
[3] Rec. Doc. 15.
[4] *See* Rec. Doc. 11, p. 9; 11.
[5] Rec. Doc. 11-1, p. 10.

him.[6] The two orally agreed that Denis would receive Simon's interest in D Squared in return for the debt.[7]

Simon filed chapter 7 in 2019 and listed his one-third interest in D Squared as having no value.[8] D Squared sold the property in March 2021 and divided the proceeds (a total of about $168,000) so that one-third went to the third member, two-thirds went to Denis, and Simon received nothing.[9] Simon signed the document allowing the property to be sold.[10]

Without knowing of the sale, Harrison propounded document requests to Simon regarding D Squared.[11] Harrison learned of the sale when Simon supplemented discovery in May 2021.[12] Following a four-day bench trial, the Bankruptcy Court sustained Harrison's objection to Simon's discharge under section 727(a)(2)(B) of the Bankruptcy Code on grounds that Simon transferred his share of the sale proceeds to Denis post-petition with the intent to hinder, delay, or defraud his creditors.[13] Simon now appeals this decision.

## II.    LAW & ANALYSIS

This Court reviews the legal standards employed by the Bankruptcy Court *de novo*.[14] The Bankruptcy Court's findings of fact are reviewed for *clear error*.[15] Simon argues that the Bankruptcy Court erred in its conclusion that "Simon allowed his financial

---

[6] *See* Rec. Doc. 11, p. 9.
[7] *See* Rec. Doc. 11, p. 9; *see also* Rec. Doc. 11-1, p. 10.
[8] *See* Rec. Doc. 11, p. 11.
[9] *See* Rec. Doc. 11, p. 12.
[10] Rec. Doc. 11-1, p. 99–103.
[11] *See* Rec. Doc. 13, p. 8; *see also* Rec. Doc. 11-1, p. 18.
[12] *See* Rec. Doc. 13, p. 8; *see also* Rec. Doc. 11-1, p. 18.
[13] Rec. Doc. 11-1.
[14] *Matter of Cmty. Home Fin. Servs. Corp.*, 32 F.4th 472, 481 (5th Cir. 2022); *Lear v. Little*, 613 B.R. 872, 875 (M.D. La. 2020).
[15] *Id.*

interest in D Squared's sale proceeds, which properly were payable on account of an interest in the limited liability company belonging to the bankruptcy estate, to be transferred to his brother."[16]

Simon argues that this conclusion is erroneous, first, because under Mississippi law, he lacked any authority to decide what D Squared did with the proceeds of the sale of the D Squared property after he filed for bankruptcy. Second, Simon argues that he lacked the authority to transfer the interest in D Squared because only the Trustee could exercise the rights once Simon filed for bankruptcy. Finally, he claims that the Bankruptcy Court erred in finding that Simon acted with intent to hinder, delay, or defraud creditors because Simon sincerely believed that he was not entitled to the proceeds of the sale.

### A. Simon's Authority

In opposition to the appeal, Harrison asserts that Simon's first and second arguments regarding his authority (or lack thereof) to manage D Squared's property were not raised before the Bankruptcy Court. Therefore, Harrison claims, the arguments are waived. It is well established that the Court does not consider claims or arguments that were not presented to the Bankruptcy Court.[17] Simon fails to successfully rebut Harrison's argument that the claims raised for the first time in Simon's appeal are not properly before the Court. The Court likewise does not see where these issues were addressed before the Bankruptcy Court. Because a district court considering a bankruptcy appeal cannot

---

[16] Rec. Doc. 11, p. 13–14.
[17] *In re Trinh*, 210 F.3d 369 (5th Cir. 2000); *Matter of Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990) (finding that when an issue was raised for the first time on a bankruptcy appeal to the district court, the district court correctly refused to consider the argument. "It is well established that we do not consider arguments or claims not presented to the bankruptcy court."); *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005).

consider issues first raised on appeal, the Court will not consider Simon's first two arguments.

**B. Simon's Intent to Defraud**

As for his third argument, Simon claims that the evidence before the Bankruptcy Court was insufficient to warrant finding that Simon had the intent to defraud, which ultimately resulted in the denial of his discharge. Denying a debtor's discharge is a "harsh remedy," and 11 U.S.C. § 727(a) of the Bankruptcy Code is designed to encompass "only those debtors who have not been honest and forthcoming about their affairs."[18] Under 11 U.S.C. § 727:

> (a) The court shall grant the debtor a discharge, unless—
>
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>>
>>> (A) property of the debtor, within one year before the date of the filing of the petition.

The Court can consider six circumstances or "badges of fraud" as factors to identify fraudulent intent. All factors are not required to be present for a positive finding. The badges of fraud include:

> (1) the lack or inadequacy of consideration;
>
> (2) the family, friendship or close associate relationship between the parties;
>
> (3) the retention of possession, benefit or use of the property in question;
>
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;

---

[18] *In re Guillet*, 398 B.R. 869, 886-87 (Bankr. E.D. Tex. 2008).

>   (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>
>   (6) the general chronology of events and transactions under inquiry.[19]

"[T]he accumulation of several factors indicates strongly that the debtor possessed the requisite intent."[20]

After reviewing the exhibits and hearing live testimony presented at a four-day trial, the Bankruptcy Court found evidence touching on several of the badges that weighed against Simon. Fraudulent intent was presumed due to the familial relationship between Simon as transferor and his brother as transferee.[21] Simon's continued use of the property for hunting purposes also weighed in support of finding intent. Additionally, the financial difficulties suffered by Simon, which led to the brothers' oral agreement, also allude to Simon's intent. Finally, Simon's knowledge of the sale beforehand and his failure to disclose it to the trustee before the closing—though not a badge—was found to support an inference that Simon intended to conceal the transaction.

Simon claims the Bankruptcy Court erred in presuming that Simon had the intent to defraud due to the familial relationship between Simon and his brother Denis. A presumption of fraudulent intent exists for discharge denial purposes when a debtor transfers property to relatives.[22] Simon argues that a familial transfer could not have occurred because Simon did not act as a transferor. Rather, he claims proceeds were

---

[19] *See Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008); *Matter of Wiggains*, 848 F.3d 655, 661 (5th Cir. 2017).
[20] *A&M Investments, LLC v. Kirtley (In re Kirtley)*, 533 B.R. 154, 163 (Bankr. S.D. Miss. 2015) (quoting *FDIC v. Sullivan (In re Sullivan)*, 204 B.R. 919, 941 (Bankr. N.D.Tex.1997)); *see also Cannella v. Jackson (In re Jackson)*, 625 B.R. 648, 652 (Bankr. S.D. Tex. 2021).
[21] *In re Pratt*, 411 F.3d 561, 565 (5th Cir. 2005); *see also Schmidt v. Cantu (In re Cantu)*, 2011 WL 672336, at *6 (Bankr. S.D. Tex. 2011).
[22] *Id.*

directly transferred from D Squared as transferor to Denis as transferee, with Simon lacking authority over the transfer. Additionally, he claims that the presumption based on a familial relationship cannot apply because the familial transfer must be gratuitous, and, here, the Bankruptcy Court found that the transfer occurred in consideration for the past mortgage payments that were made on Simon's behalf.

The governing law provides that a "presumption of actual fraudulent intent necessary to bar a discharge arises when property is *either* transferred gratuitously or is transferred to relatives."[23] Accordingly, whether the transfer to Denis was gratuitous or not is irrelevant. Moreover, the Bankruptcy Court directly held that Simon "allowed" or "permitted" the transfer to his brother Denis within one year of the filing of the petition.[24] Section 727 explicitly applies where a debtor has "transferred, removed, destroyed, mutilated or concealed, *or has permitted to be transferred*, removed, destroyed, mutilated or concealed- (A) property of the debtor, within one year before [filing]; or (B) property of the estate, after the date of [filing the petition]."[25] Accordingly, the Court finds no error in the Bankruptcy Court's holding.

Finally, on Appeal, Simon claims that he should not have been denied a discharge because the proceeds at issue were minimal, and the Trustee has yet to make a claim for the proceeds since their existence was revealed. However, the amount in question—over $56,000—is not an insignificant sum, and, moreover, the Trustee's claim to recover the proceeds is irrelevant; the only pertinent issue is the debtor's intent, not the effect on

---

[23] *Matter of Chastant*, 873 F.2d 89 (5th Cir.1989) (citing *In re Butler*, 38 B.R. 884, 888 (Bankr. D.Kan.1984) (emphasis added)).
[24] Simon's first two arguments on appeal—which are waived by Simon's failure to raise the arguments before the Bankruptcy Court—are further foreclosed by this principle.
[25] (emphasis added).

creditors. The Court finds no clear error. The judgment of the Bankruptcy Court is affirmed.

### III. CONCLUSION

Having considered the arguments of Jules Anthony Simon and applied the appropriate standard of review, this Court affirms the Ruling and Judgment of the Bankruptcy Court.

Simon's Appeal is hereby dismissed, and this matter shall be terminated by the Clerk of Court.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 27th day of September, 2023.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**